BUHSE *v.* WHITEHEAD & KALES IRON WORKS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—COURSE OF EMPLOYMENT.

On certiorari to review an award by the industrial accident board to the parents of decedent under the workmen's compensation law (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423 *et seq.*), for the death of decedent as the result of blood poisoning, following an injury to his finger, claimed to have been received in the course of his employment, *held*, that there was competent testimony upon which the board could base its finding.[1]

2. SAME—PARTIES—PARENT AND CHILD—CONDITIONAL AWARD.

Where the claim for compensation for the death of a son was made in the name of both parents, who had benefited alike by the son's contributions, and the proceedings negative the possibility of a second claim being made in the name of the mother, the contention of appellant that the award should be made conditional upon the filing of a waiver by the mother was without merit.

3. SAME—AMOUNT OF AWARD—CONTRIBUTIONS.

Where appellant claims the award should be $3.01 per week, computed upon the definite amount of $416 shown by the evidence to have been contributed by decedent to claimants the year previous to his death, under section 5, part 2, Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5435, an award of $3.33 1/3 per week will not be reversed, where the evidence shows that there were additional contributions of uncertain amount for fuel.

Certiorari to Industrial Accident Board. Submitted October 5, 1916. (Docket No. 44.) Decided December 22, 1916.

Albert Buhse presented his claim against the Whitehead & Kales Iron Works for compensation for the

---

[1] On application and effect of workmen's compensation acts, generally, see comprehensive note in L. R. A. 1916A, 23 *et seq.*

death of his son in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Goodenough & Long,* for appellant.
*Lyle G. Younglove,* for appellee.

BROOKE, J. This is certiorari to the industrial accident board. The committee on arbitration awarded the applicant the sum of $3.50 per week for a period of 300 weeks as a partial dependent upon his son, Charles Buhse. Upon appeal to the board the award was affirmed in all things, except that the amount to be paid was reduced from $3.50 to $3.33 1/3 per week.

Appellant states that the following three questions are involved:

(1) Is there competent evidence in support of applicant's claim that Charles Buhse received an injury in the course of his employment, from which he contracted blood poisoning and died?

(2) Is applicant entitled to compensation, as a partial dependent?

(3) If applicant is entitled to compensation, is the amount awarded correct?

It is the contention of appellant that the evidence introduced on the part of applicant is not sufficient to sustain the finding of the board that Charles Buhse sustained an injury in the course of his employment which developed into blood poisoning and ultimately caused his death.

The facts as disclosed by the record are as follows: The deceased was a structural iron worker, and while engaged in his work on November 23, 1914, one of his index fingers was caught and jammed. About a week later he suffered a second injury to the same finger. He became ill shortly thereafter and was sent to Harper Hospital, where he died on December 30, 1914, from blood poisoning.

The following evidence with regard to the injury was introduced by William Tillman:

"In November, 1914, I was employed by respondent on the job at the Ford plant with Charles Buhse. We were both structural iron workers. We roomed together on Gerald street, Highland Park. On November 23, 1914, we were upon a column getting a girder in place, and the girder swung around, and caught his finger between a lug on the column, and the girder pinched his finger. He says: 'Bill I nearly lost my finger.' He showed it to me. It was black and blue. He did not stop work."

Under objection by respondent that the testimony was hearsay, and incompetent, the witness testified:

"He pinched the same finger later on. I did not see it until after it was pinched. It was 'busted open.' I guess it must have bled. This second injury occurred on the power house. At the time when he got his finger hurt, when I was with him, his finger was not broken open; it was only black and blue. About a week after that when he came home he showed me the finger broken open. There wasn't a gash in it; it just seemed pinched at the end. He dressed it with some carbolic salve. I don't know anything about this second injury except what he told me. I wasn't present at the time. I don't know anything about it. He complained to me on Saturday that his arm pained him. On Sunday he went to see Dr. Edwards. I went with him to the hospital on Monday. He complained at that time of being sick. I saw the finger from time to time after the first injury. Some time about a week after the first accident, I could not give the exact date, he showed me the finger broken open before we washed up. He went to the drug store and got carbolic salve to dress it. Saw him at the hospital, and wound was nearly healed up."

By Bert Reese:

"I am an iron worker. In November, 1914, I was employed by respondent on the Ford job. During the latter part of November, 1914, I was with Charles Buhse, when he hurt his finger. He shook his finger

like that (indicated), and I am pretty sure he said, 'I hurt it again.' I heard he had hurt it before. I didn't see the injury itself. I heard later he went to the hospital."

By Dr. E. Parke Edwards:

"Charles Buhse came to my office one morning (I don't know the date) with an abrasion on one of his fingers and was complaining of pain in his arm, and I took his temperature. There was a slight fever that day, and I asked him to come back the next morning, which he did, and he was worse, if anything. The symptoms were worse, his pain was greater, and I examined his arm more carefully, and found a lymphangitis, red streak running up the arm and great tenderness in the axillary, in the arm pit, and I advised him at once to go to the hospital, and made arrangements for him to go to Harper Hospital. while he was still in my office. Then I called Dr. Potter and he took charge of the case. I diagnosed the case as blood poisoning. It was about December 6, 1914, that I saw him first. I saw him after he went to the hospital. I saw nothing to change my opinion. It was more of an affirmation of my opinion.

"*Q.* There was nothing to indicate that the infection might not have been caused by pricking it open, or something like that?

"*A.* It could not have been done.

"*Q.* Was there anything to show on the wound that it could not, though?

"*A.* The wound would not be as extensive, the size of the wound, by pricking it open or anything like that.

"*Q.* Yes, but the wound might be quite extensive and yet not be infected?

"*A.* Very true. That is true."

On behalf of respondent the following testimony was introduced:

By Edward J. McCarthy:

"I am adjuster under the compensation law. Respondent is one of the companies I am employed by. I got acquainted with Charles Buhse, as a result of the timekeeper at the Ford job telephoning to the

head office that Mr. Buhse was in the hospital. I went up to the hospital then, and saw Mr. Buhse. He was confined to his bed. I asked him what was the matter. He told me he was sick. He said he hurt his finger three weeks before. I said, 'Where?' He said, 'On the end.' He showed me the right index finger. I said, 'How did you hurt it?' 'Well,' he said, 'I pinched it.' I said, 'What is the matter with it now?' He had his arm under the quilts, and I said, 'How is it now?' 'Why,' he says, 'my finger is all right, but I have got pains in my arm.' I said, 'Let me see the finger,' and he showed me the finger, and the finger was practically healed."

By Mrs. Fred Williams:

"I kept a rooming house in Highland Park. Mr. Buhse roomed there. I did not know anything about his having a sore finger until the day he was taken to the hospital. I said, 'What is the matter with Mr. Buhse?' and he said, 'I ran a piece of steel in my finger a few days ago, and I picked it open, and it is bothering me,' and he said, 'I went to a doctor this morning, and he said I was about to have blood poison.' He said he opened it, opened his finger with a knife to see if it would ease it. He said he ran a piece of steel in his finger three weeks before that, and he said that he didn't see that anything seemed to do it any good. He said he was suffering from those pains for three or four days before he spoke to me and before he tried to ease it."

By Dr. H. D. Jenks:

"He said that he had been one week in the hospital. About two weeks previous to his entrance to the hospital he had pinched his finger, as he expressed it; that it had raised a little bit of a dark pimple. I said, 'Was the skin broken?' He said, 'No, sir.' I said, 'You were not laid up?' and he said, 'No,' he was not laid up; had worked right along. He said, 'A few days after that,' he said, 'I took and pricked that with a needle,' and curiously enough he said he sterilized the needle. I said, 'What did you get out of it?' He said, 'I didn't get anything.' He said, 'There was a little black pimple there,' and I said, 'You kept on working?' He said,

'Yes, sir.' He said he worked for, approximately, I won't be exact on this, but approximately a week later."

Based upon the foregoing testimony, it is the claim of appellant that there is no competent testimony that the septicæmia which caused decedent's death resulted from the accident to his finger. It is contended that blood poisoning can only result when there is an opening in the skin through which infection may pass into the blood, and it is urged that under the testimony contained in this record it is just as reasonable to suppose that decedent met his death through blood poisoning superinduced by his own treatment of his finger which had been bruised but not broken open, as that it resulted from a breaking open of the skin at the time of either the first or second injury. In other words, it is claimed that the actual cause of the decedent's death is purely conjectural. With this view we are not inclined to agree. We think that the testimony introduced will support a reasonable inference that an open wound was caused by either the first or second injury to the finger, and that the blood poisoning resulted therefrom rather than from an act self-inflicted in an endeavor to relieve the pain from which decedent was suffering. We are unable to say that there was no competent testimony upon which the board could base its finding that decedent came to his death as a result of an injury received in the course of his employment.

The second contention of the appellant is based upon the assertion that the record fails to show any contributions made by decedent directly to the applicant, and it is said that to protect respondent from a claim on the part of Augusta Buhse, mother of decedent, the award should be made conditional upon a filing of a waiver by Augusta of any claim growing out of the same circumstances, unless the court should be of opin-

ion that all payments were made for the benefit of the applicant. In this contention we think that the appellant has overlooked the fact that the claim for compensation is made in the name of both Albert and Augusta Buhse, father and mother of decedent, and the evidence clearly discloses that such contributions as the decedent made were made alike for the benefit of his father and mother. The proceedings negative the possibility of a second claim being made against respondent by Augusta, the mother, she being a party to the present proceeding.

The last question discussed in the brief of appellant is as to the amount of the award. It is claimed that the record shows contributions by the deceased to his father and mother of not more than $416, during the year previous to his death, and that his conceded earnings being $1,380, according to the method of computation set out in section 5, part 2, of the act (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5435), the award should have been $3.01 per week instead of $3.33 1/3 per week. Assuming the facts as to the contributions to be as stated by appellant, the computation made by appellant is conceded by counsel for appellee to be correct. It is urged, however, by counsel for appellee, that the record shows other small contributions in excess of $416 made by decedent to his parents within the year. There is testimony to the effect that some money was furnished by decedent for the purchase of coal and wood, the exact amount is not disclosed by the record; but, as the amount allowed therefor by the board is small and apparently within the limits set by the testimony, we are not disposed to question its determination upon this point.

The order of the industrial accident board is affirmed. ·

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.